**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LONGVIEW ALUMINUM, L.L.C., | ) | Case No. 03 B 12184 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| WILLIAM A. BRANDT, | ) | |
| Chapter 11 trustee for the estate of | ) | |
| LONGVIEW ALUMINUM, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 05 A 00888 |
| | ) | |
| v. | ) | |
| | ) | |
| TABET DIVITO & ROTHSTEIN, | ) | |
| LLC, and DOMINIC FORTE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION**

This adversary proceeding, involving alleged preferential transfers from the debtor Longview Aluminum, L.L.C., is before the court for judgment after a trial on stipulated facts. The only issue is whether the single remaining defendant, Dominic Forte, was an "insider" of the debtor, as defined in § 101(31) of the Bankruptcy Code (Title 11, U.S.C.). Although the reported decisions take different positions on the question, the better view is that Forte's position as one of the five managers of a limited liability company makes him an insider. Accordingly, judgment will be entered in favor of the plaintiff trustee.

## Jurisdiction

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. However, the district courts may refer these cases to the bankruptcy judges for their districts under 28 U.S.C. § 157(a), and the District Court for the Northern District of Illinois has made such a reference through its Internal Operating Procedure 15(a). When presiding over a referred case, a bankruptcy judge has jurisdiction under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments as to core proceedings within the case. Proceedings to avoid and recover preferences are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F).

## Stipulated Facts

Because the parties agreed to try this matter by stipulated facts, the material facts are not in dispute. (*See* Parties' Joint Stipulation of Material Undisputed Facts ("Stipulation"), Adv. Docket No. 93.)

*A. Forte's Relationship to the Debtor.*

The debtor, Longview Aluminum, L.L.C., is a Delaware limited liability company. (Stipulation at ¶ 6.) Until November 7, 2002, Dominic Forte owned both a 12% distributional interest and a 12% voting share in Longview and was one of the five members of its Board of Managers. (*Id*. at ¶ 11.) The principal member of the board was Michael W. Lynch, who owned 51% of the company. (*Id*. at ¶ 12.) Forte also held interests in several other enterprises that were owned and managed by the individuals who managed Longview; Lynch held the majority share of all of these enterprises. (*Id*. at ¶¶ 13-14.)

On July 10, 2002, Forte commenced an action against Lynch in the Circuit Court of Cook County, Illinois. (*Id.* at ¶ 18.) Forte alleged that, despite his ownership interest and voting rights, he had been denied access to Longview's books and records and was prevented from participating in its business operations. (*Id.* at ¶ 20.)

On November 7, 2002, the parties to the state court action reached a settlement that required Longview to pay Forte a total of $400,000. (*Id.* at ¶¶ 36-37.) The settlement also provided that an initial payment of $200,000 was due as soon as the settlement was executed. (*Id.* at ¶ 38.) Upon receipt of the initial payment, Forte was required to forfeit his interest in Longview and resign his positions in the firm, subject to reinstatement if the remaining payments were not made. (*Id.* at Exh. K, §§ 2-3.) The remaining $200,000 was to be paid in eight monthly installments of $15,000 commencing on January 15, 2003 and a final installment of $80,000 on September 15, 2003. (*Id.* at ¶¶ 38-39.)

At first, the parties carried out the terms of the settlement. On November 7, 2002, Longview delivered a cashier's check to Forte in the amount of $200,000, and Forte conditionally relinquished his interests and rights in the firm. (*Id.* at ¶ 43.) On or about January 16, 2003, Longview delivered the first of the scheduled $15,000 monthly installment payments to Forte's counsel, Tabet DiVito & Rothstein, LLC ("TDR"). (*Id.* at ¶ 45.) But Longview made no further installment payments, and on March 4, 2003, it filed the Chapter 11 bankruptcy case now before the court. A trustee was appointed in the case on July 29, 2003.

*B. Procedural History.*

The trustee commenced this adversary proceeding on March 3, 2005, filing a two-count complaint against Forte and TDR. Count I sought to avoid the $200,000 and $15,000 payments

3

as preferential transfers and to recover them from Forte. Count II sought in the alternative to recover the $15,000 payment from TDR. The parties have now agreed that Forte, but not TDR, is liable to the trustee for the $15,000 transfer, and accordingly the trustee has voluntarily dismissed Count II, removing TDR as a defendant.

However, Forte disputes the trustee's claim to the $200,000 transfer, contending that although Longview made this transfer less than a year before its bankruptcy filing, the transfer took place more than 90 days before the filing and so could only be a preference, under § 547(b)(4)(B) of the Bankruptcy Code, if Forte was an insider of Longview at the time of the transfer. The parties agreed to a trial on this issue—the only matter in dispute—stipulated to all of the material facts, and submitted simultaneous briefs. The parties recognize that the decision on Forte's status as an insider will determine whether the trustee may avoid and recover the $200,000 payment from Forte.

**Conclusions of Law**

Section 547(b) of the Bankruptcy Code allows a trustee to avoid as preferences certain transfers that the debtor made to creditors before the bankruptcy filing. Section 550(a), in turn, requires the creditors who received preferences to return them, or their value, to the bankruptcy estate. The purpose of these provisions is to assure that all claimants to a bankruptcy estate are treated equally, rather than allowing certain creditors to be preferred by prepetition payments. *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 316 (3d Cir. 2003). The reach-back of § 547(b) varies. For all creditors, § 547(b)(4)(A) provides that a transfer may be a preference if it occurred within 90 days before the bankruptcy filing, but for "insiders" of the debtor, § 547(b)(4)(B) pro-

4

vides that the transfer is actionable if it took place within a year of the filing. Because the $200,000 transfer to Forte took place between 90 days and one year of the Longview bankruptcy filing, his status as an "insider" is essential to the transfer being a preference.

Section 101(31)(B) of the Bankruptcy Code defines "insider," providing that if the debtor is a "corporation," the term "includes" the following:

> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;
> (iv) partnership in which the debtor is a general partner;
> (v) general partner of the debtor; or
> (vi) relative of a general partner, director, officer, or person in control of the debtor;

Three aspects of this definition are widely accepted. First, a limited liability company like Longview—an "LLC"—is a "corporation" as that term is used in the Bankruptcy Code. Section 101(9) of the Code defines "corporation" broadly, to encompass both (1) an "association having a power or privilege that a private corporation, but not an individual or a partnership, possesses" and (2) "an unincorporated company." 11 U.S.C. § 101(9). An LLC fits both of these categories because it is an unincorporated company and because it affords its members the same limited liability extended to corporate shareholders. *See* Fed R. Bankr. P. 7007.1 advisory committee's note ("[L]imited liability companies and similar entities . . . fall under the definition of a corporation in Bankruptcy Code § 101."); *Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 717 (B.A.P. 9th Cir. 2004) ("[A]n LLC, by virtue of its structure and limited liability features, fits comfortably within the Bankruptcy Code's definition of 'corporation. . . .'").

Second, § 101(31)'s definition of "insider" is "illustrative rather than exhaustive." *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996); *accord Anstine v. Carl Zeiss Meditec AG (In re U.S.*

5

*Med., Inc.)*, 531 F.3d 1272, 1276 (10th Cir. 2008); *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996); *Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 625 n.4 (8th Cir. 1984); *Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.)*, 712 F.2d 206, 210 (5th Cir. 1983). That is, by using the non-exclusive term "includes" to cover positions such as "director," "officer," and "general partner," the definition applies to individuals beyond those who hold the specified positions. *Krehl*, 86 F.3d at 742 (citing legislative history in holding that "insider" covers parties "in addition to the individuals and entities actually named"); *see also* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting").

Finally, several decisions have adopted terminology reflecting the illustrative nature of the definition, referring to the specified positions as "per se" or "statutory" and other categories of insiders as "non-statutory." *See Rupp v. United Security Bank (In re Kunz)*, 489 F.3d 1072, 1079 (10th Cir. 2007); *Miller Ave. Prof'l and Promotional Servs., Inc. v. Brady (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626, 631 (B.A.P. 9th Cir. 2004).

Despite the agreement of the courts on these points, however, there is no consensus on the disputed issue here—how to determine whether a member or manager of an LLC is an insider of the LLC. Rather, decisions on that issue have resulted in two conflicting approaches, reflected in the arguments of the parties.

One approach focuses on the alleged insider's control of the debtor. Under this approach, transferees who do not fall within one of the per se categories of § 101(31) can be insiders only under a test for non-statutory positions that "requires some showing of control of the debtor." *Enter. Acquisition Partners*, 319 B.R. at 633 (citing *Miller v. Schuman (In re Schuman)*, 81 B.R.

6

583, 586 (B.A.P. 9th Cir. 1987)).[1]  Forte advocates the use of this test and argues that, given his dispute with the other members of Longview, he had no control of the debtor at the time of the $200,000 transfer and so was not an insider.

The other approach focuses on the similarity of a party's position to the per se categories.  Decisions of bankruptcy courts in several circuits find that if a member or manager of an LLC holds a position substantially identical to the positions specified in § 101(31)—such as a director or officer—then the LLC member or manager is an insider.  *See Solomon v. Barman (In re Barman)*, 237 B.R. 342, 348-49 (Bankr. E.D. Mich. 1999); *O'Connell v. Shallo (In re Fliedermaus LLC)*, 323 B.R. 101, 111 (Bankr. S.D.N.Y. 2005); *Douglas v. Kosinski (In re Kosinski)*, No. 06-1400, 2009 WL 261538, at *14 (Bankr. D. Mass. Feb. 4, 2009).  The trustee urges adoption of this test, arguing that at the time of the $200,000 transfer, Forte occupied a position in Longview substantially the same as a director of a corporation, establishing his status as an insider.

The second approach is the better interpretation of § 101(31)(B).  The Seventh Circuit's observation in *Krehl*—that the categories of insiders set out in the definition are "illustrative rather than exhaustive"—supports this approach.  "Person in control" of a corporation, including an LLC, is only one of the illustrations of insider set out in § 101(31).[2]

---

[1] Bankruptcy courts in the Ninth Circuit have followed the control-based approach.  *See Kotoshirodo v. Dorland & Assocs., Inc. (In re Lull)*, No. 08-90001, 2008 WL 3895561, at *9 (Bankr. D. Hawai'i Aug. 22, 2008) (member of an LLC found to be an insider due to elements of control); *Elsaesser v. Cougar Crest Lodge, L.L.C. (In re Weddle)*, 353 B.R. 892, 897-900 (Bankr. D. Idaho 2006) (member of an LLC found not to be an insider because of a lack of control).

[2] Indeed, *Krehl* states expressly that the various categories of § 101(31) encompass any close relationship between an insider and a debtor corporation, not simply control.  "In ascertain-

Under § 101(31), "directors" or "officers" of a corporation are insiders regardless of their ability to control the corporation. *See Smith v. Ruby (In re Pub. Access Technology.com, Inc.)*, 307 B.R. 500, 505 (E.D. Va. 2004) ("It is unnecessary for a court to determine whether an individual is both a director and a person in control, or both an officer and a person in control, as the statutory definition is clearly stated in the disjunctive."). Section 101(31) defines officers and directors as insiders simply by virtue of their position. *See Bucki v. Singleton (In re Cardon Realty Co.)*, 146 B.R. 72, 78 (Bankr. W.D.N.Y. 1992) ("It is irrelevant whether [an officer] actually 'controlled' [the debtor]."); *Office of the U.S. Trustee v. Fieldstone Mortgage Co.*, No. CCB-08-755, 2008 WL 4826291, at *5 (D. Md. Nov. 5, 2008) ("[C]ontrol . . . is an independent additional ground for finding a person an insider, not a feature that officers or directors are required to possess in order to be deemed insiders."); *Magers v. Bonds (In re Bonds Distrib. Co., Inc.)*, No. 98-6044, 2000 WL 33673768, at *3-4 (Bankr. M.D.N.C. Mar. 31, 2000) (finding defendant an insider even though he did not "act" like a director).

At the same time, it is not simply the title "director" or "officer" that renders an individual an insider; rather, it is the set of legal rights that a typical corporate director or officer holds. Thus, in *Kunz* the Tenth Circuit held that an individual designated as "director emeritus" was not an insider under § 101(31) because he did not have the rights commonly understood to belong to the director of a corporation. *Kunz*, 489 F.3d at 1077. The court cited a dictionary definition for the proposition that "[w]hen the term 'director' is used in reference to a corporation . . . the term

---

ing insider status . . . courts have looked to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm's length." *Krehl*, 86 F.3d at 741-42; *accord Kunz*, 489 F.3d at 1078-79.

8

plainly means a person who is a member of the governing board of the corporation and participates in corporate governance." *Id.* By the same reasoning, someone who has the same rights as a "director" would be an insider even if the title were "governor" or "supervisor." The title "director" is simply an illustration of the underlying relationship. Accordingly, a person who holds a position with respect to an LLC comparable to the position a director holds to an ordinary corporation must be considered an insider.[3]

Forte's position as one of the five managers of Longview gave him a position equivalent to that of a corporate director. As an LLC under Delaware law, Longview's managers were "named" either by its limited liability company agreement or by the members of the company. Del. Code Tit. 6, § 18-101(10). A corporation's officers are similarly "appointed or designated" by the bylaws or the directors. Del. Code Tit. 5, § 3303(14). Additionally, an LLC is managed by its members unless the LLC agreement provides otherwise, Del. Code Tit. 6, § 18-402, just as a corporation is "managed by or under the direction of a board of directors." Del. Code Tit. 8, § 141. Far from providing otherwise, Longview's LLC agreement states that "the authority, power, and responsibility to manage the operations and affairs of the Company shall be vested in the Board of Managers and the Members" and grants the Board of Managers complete authority to act, except for certain major decisions specifically reserved to members. (Stipulation at Exh. A, §§ 5.1 & 5.2.)

---

[3] *Jahn v. Economy Car Leasing, Inc. (In re Henderson)*, 96 B.R. 820, 824-26 (Bankr. E.D. Tenn. 1989), states this as a general rule, holding that the relevant inquiry under § 101(31) for a non-statutory relationship is "whether the relationship nonetheless falls within the general class of insiders contemplated by the statute" and citing *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 n.1 (1934), for the rule that "[w]hen the verb 'includes' is used to define a particular word, it usually imports a general class with only some of the class' particular instances specified in the definition."

9

Thus, under Delaware law and Longview's LLC agreement, Forte's position as manager and member of Longview accorded him the same relationship to the LLC as a director has to a corporation. The illustration in § 101(31)(B) of corporate "director" applies precisely to an LLC "manager" such as Forte. Control of the entity—a separate illustration of a corporate insider—is not required.

Forte, however, cites several decisions for the proposition that someone in a position akin to a director can avoid insider status by not actively participating in corporate management. He misinterprets the decisions.

• *O'Connell v. Shallo, (In re Die Fliedermaus, LLC)*, 323 B.R. 101 (Bankr. S.D.N.Y. 2005), which involved a breach of fiduciary claim against a manager of a debtor LLC, found that the defendant actually was an insider under § 101(31). The court simply noted that a showing of no involvement in the debtor's affairs could be a defense to the breach of fiduciary duty claim. *Id.* at 111.

• *Hunter v. Babcock (In re Babcock Dairy Co.)*, 70 B.R. 685 (Bankr. N.D. Ohio 1986), found that although the defendant was contractually entitled to be chairman of the debtor's board of directors, there was no evidence he had been elected to that position at the time of the subject transfers, and "nothing . . . suggests that [he] served in any capacity which is customarily associated with either a director or an officer of a corporation." *Id.* at 689.

• *Butler v. David Shaw, Inc.*, 72 F.3d 437 (4th Cir. 1996), involved an alleged insider who had relinquished all of his stock in the debtor before the alleged transfer and thus could not be a statutory insider under § 101(31)(A)(iv). *Id.* at 441.

• *Badger Freightways, Inc. v. Continental Illinois National Bank and Trust Co. of Chicago (In re Badger Freightways, Inc.)*, 106 B.R. 971 (Bankr. N.D. Ill. 1989), dealt with lenders rather than management personnel and held that for a lender to be an insider, the lender must be able to control the payment of funds from the debtor. *Id.* at 982.  Forte, of course, was not a lender.

• *Guardian Equipment Corp. v. Conkie (In re Guardian Equipment Corp.)*, 20 B.R. 824 (Bankr. S.D. Fla. 1982), involved an alleged insider who effectively resigned as officer and director of a corporation after being informed that he was going to be terminated. *Id.* at 825.  Forte, in contrast, did not give up any of his managerial rights before receiving the $200,000 transfer.  To the contrary, he filed suit to enforce those rights.

At most, the decisions cited by Forte stand for the proposition that insiders must be able to exercise some degree of control or influence over the debtor—but only if they do not have a formal legal relationship with the debtor that is among the examples listed in the statute or closely analogous to them.  *See, e.g., Babcock*, 70 B.R. at 690.  In this case, there is no dispute that pursuant to Longview's LLC agreement Forte held the position of manager and member until the date of the $200,000 transfer, at which point he resigned only after he had received the transferred funds.  Indeed, Forte was able to obtain an agreement to pay him $400,000 precisely on the ground that he was entitled to exercise the management rights to which he was entitled, and he agreed to relinquish those management rights only conditionally until the full payment of the settlement amount was made.  Thus, Forte received the settlement payments because of his right to participate in management, giving him a status much different from that of arms-length creditors. Forte was therefore an insider at the time of the $200,000 initial settlement transfer.

11

## Conclusion

Because Forte was an insider at the time of the $200,000 transfer, and because the other conditions for a preference are not in dispute, the transfer is subject to avoidance, as is the $15,000 transfer pursuant to the party's agreement. Therefore, the trustee may avoid and recover both transfers pursuant to §§ 547 and 550. A separate judgment will be entered to that effect.

Dated: November 24, 2009

_____
Eugene R. Wedoff
United States Bankruptcy Judge